Clare J. Hoyt, J.
On March 8,1958 plaintiff, employed as a freight conductor by the defendant railroad, was injured during his employment and brought an action under the Federal Employers’ Liability Act (U. S. Code, tit. 45, § 51 et seq.) against the defendant. The defendant brought a third-party action against the third-party defendant on whose sidetrack the injury occurred. A verdict in plaintiff’s favor in the amount of $80,750 was rendered by the jury and a judgment thereon has been entered for $80,941.25. Upon completion of the trial of plaintiff’s action, third-party plaintiff and defendant stipulated that the third-party action would be tried by the court without a jury and that the record in plaintiff’s action against the defendant would be considered a part of the record in the third-party action. The third parties thereupon offered additional proof.
In August of 1948 defendant and third-party defendant entered into a sidetrack agreement covering, among others, the Chemical Low Track on third-party defendant’s property. Under this agreement the defendant agreed to deliver and pick up carload freight.
Paragraph 5 (b) of the agreement provided: “ (b). The Contractor [U. S. Rubber] also agrees.to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Contractor, or the Contractor’s employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other *959 person or corporation, while on or about said sidetrack; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.”
This Chemical Low Track siding ran into a building or shed with low clearances. In 1963 the defendant on several occasions called this to third-party defendant’s attention and requested it to install a “ telltale ” on the approach to this low clearance. A telltale is a device, consisting of a horizontal arm or bar, placed some 22 feet above the track and attached normally to an upright pole. From the horizontal arm or bar some 14 rods are suspended. The rods are approximately 7 feet in length so that the bottom of them will hang below the level of the obstruction and will be not over 16 feet above the top of the rail. These measurements are specified in plans for standard bridge warning (telltales) prepared by the defendant and furnished to the third-party defendant when the installation was requested. The rods were specified in said plans to be “ extra galvanized steel wire #9 B & S gouge ”, a gouge heavy enough to make them stiff and to hang straight down. Their flexibility resulted from their being hung in eyelets. In August of 1953, pursuant to defendant’s request and after receipt of the specifications therefor, third-party defendant erected a telltale, but not in accord with the specifications. The horizontal arm was attached to another building adjacent to the sidetrack. Instead of using heavy gouge wire, however, third-party defendant used flexible cables, looped at the bottom to prevent unraveling.
Although the defendant contended that the telltale was reconstructed in 1955 after a flood inundated much of third-party defendant’s property, the telltale involved in the accident was the one erected in 1953. In 1957 third-party defendant repaired a guy wire supporting the horizontal arm. It did nothing to change or affect the hanging cables.
On the night of the accident, it was dark when it occurred, plaintiff was standing on the top of a box car, the first of several in a row that were being pushed into the switch to pick up three tank cars that were standing in the sidetrack beyond the telltale. As plaintiff approached the telltale, he squatted down and with his arms parted the hanging cables and they separated and permitted him to pass through. When the tank cars were coupled, the train reversed its movement and began to pull out of the siding. Plaintiff turned around to face the telltale and again attempted to part the cables. Two or more of them became engaged or twisted forming a loop which caught plaintiff under *960 the chin. He put an arm through the loop that was formed by the cables and was swept off the car upon which he was standing. The engineer did not realize his plight and as he hung from the cables he was struck by the dome of each of the tank cars as they passed beneath him. He dropped to the tracks after the last car had passed. His fall resulted from either his disengaging himself, being unable to hold himself, or from the cables becoming untangled.
Plaintiff’s suit against defendant alleged a single cause of action for negligence charging defendant with placing him in a position of danger, failing to give him adequate warning of a dangerous condition, failing to provide him with a safe place to work and failing to comply with rules, regulations, customs and practice relating to his protection. Implicit in the jury’s verdict was a finding of negligence on the part of the defendant. The jury also found plaintiff guilty of contributory negligence, the verdict being the net amount found due him on a comparative negligence basis.
The third-party action seeks recovery from the third-party defendant on two causes of action. The first cause of action is based on the sidetrack agreement providing for indemnification for loss to person or property by reason of third-party defendant’s acts or omissions or contribution if liability should arise from joint or concurring negligence. The second cause of action is based upon the alleged primary, active negligence of the third-party defendant under common-law principles of indemnification.
The defendant maintains the Connecticut law should apply since the contract affected property in Connecticut which is where the tort occurred. Although no Connecticut law was plead or proved, the court may presume such law to be identical with New York law (Gediman v. Anheuser Busch, 299 F. 2d 537). The court may, however, take judicial notice of the common law of a sister State (CPLR 4511, subd. [a]).
For the defendant to recover either indemnification or contribution under the sidetrack agreement, the negligence of the third-party defendant must be established. This has been done. The telltale was not erected in accordance with the specifications and an employee of the third-party defendant testified he had frequently observed the cables of the telltale twisted, crossed or knotted. The third-party defendant knew the purpose of the telltale and should have foreseen the danger to a railroad employee resulting from the cables in this condition (see Steinhaus v. Steinhaus, 145 Conn. 95; Brown v. New Haven Taxicab Co., 93 Conn. 251; Borsoi v. Sparico, 141 Conn. 366).
*961 It must next be determined if the defendant was negligent, and if so, was the negligence active or passive. The jury’s finding in plaintiff’s favor did not determine whether the negligence of the defendant was active or passive (see Booth-Kelly Lbr. Co. v. Southern Pacific Co., 183 F. 2d 902, 912).
Defendant’s trainmasters made periodic inspections of third-party defendant’s sidetracks including the one on which the accident occurred. Said inspections included the condition of telltales. Plaintiff claimed to have reported the condition of this telltale to his superiors six months and one month before the accident.
The defendant had actual knowledge of this dangerous condition and directed its employees to subject themselves to this danger. This constituted active negligence and, in and of itself, precludes the defendant from claiming indemnity either under the sidetrack agreement or at common law (Putvin v. Buffalo Elec. Co., 5 N Y 2d 447). The knowledge of the defendant of this dangerous condition and its failure to correct it or to direct the third-party defendant to correct it makes the defendant equally responsible with the third-party defendant (Bush Term. Bldgs. Co. v. Luckenbach S. S. Co., 9 N Y 2d 426).
In American Mut. Liab. Ins. Co. v. Jarvis (112 F. Supp. 276), indemnity was denied one claiming indemnity where he had positive knowledge of the dangerous condition which existed. (See Restatement, Restitution, § 95; Buying v. Great Atlantic é Pacific Tea Co., 283 App. Div. 204.)
The defendant, thus, may not have indemnification at common law or under the sidetrack agreement. The sidetrack agreement gives a right of indemnification to the defendant only when the third-party defendant is alone negligent.
Although the defendant and third-party defendant are, thus, both found to be negligent, the defendant is entitled to contribution under the agreement. The agreement providing in the latter part of paragraph 5 (b) “ if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally ” changes the customary relationship of joint tort-feasors. This may be done (Restatement, Restitution, § 102; Foster v. Pennsylvania R. R. Co., 201 F. 2d 727; Wanser v. Long Is. R. R. Co., 238 F. 2d 467; Colonial Stores v. Central of Georgia Ry. Co., 279 F. 2d 777; Pennsylvania R. R. Co. v. Erie Ave. Warehouse Co., 302 F. 2d 843).
Accordingly, the defendant is entitled to contribution from the third-party defendant so that the liability of the defendant “ shall be borne by them equally ”. Defendant thus may have *962 judgment against the third-party defendant in the amount of $40,470.62. This opinion shall constitute the decision of the court pursuant to subdivision (b) of 4213 Civil Practice Law and Rules. Settle judgment.